# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA

NICOLE L. HAMILTON,      }

                           }

    Plaintiff,         }

                           }

v.                  }    **Case No.:  5:18-cv-01943-ACA**

                           }

ANDREW SAUL,         }

COMMISSIONER OF SOCIAL   }

SECURITY,           }

                           }

    Defendant.       }

## <u>MEMORANDUM OPINION</u>

Plaintiff Nicole L. Hamilton appeals the decision of the Commissioner of Social Security denying her claim for a period of disability and disability insurance benefits.  Based on the court's review of the administrative record and the parties' briefs, the court **WILL AFFIRM** the Commissioner's decision.

## I.    PROCEDURAL HISTORY

Ms. Hamilton applied for a period of disability and disability insurance benefits on November 11, 2014.  (R. 253–54).  Ms. Hamilton alleges that her disability began on May 1, 2015.[1]  (R. 284–85).  Initially, the Social Security

---

[1] Ms. Hamilton's original alleged onset date was September 1, 2006. (R. 253–54).  She later amended it to May 1, 2015. (R. 284–85).

Administration denied Ms. Hamilton's application. (R. 148-52). Ms. Hamilton requested a hearing before an Administrative Law Judge ("ALJ"). (R. 33). She received two, each before a different ALJ. (R. 49–88, 89–117). The first ALJ found that a medical evaluation was necessary to determine Ms. Hamilton's functional limitations. (R. 85). The second ALJ – proceeding without the benefit of a medical evaluation – issued an unfavorable decision dated September 29, 2017. (R. 10). The Appeals Council declined Ms. Hamilton's request for review, although it corrected the ALJ's misstatement about her date last insured. (R. 4). The Appeals Council's denial of review makes the Commissioner's decision final and ripe for the court's judicial review. *See* 42 U.S.C § 405(g).

## II.   STANDARD OF REVIEW

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The court "must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation marks omitted). "Under the substantial evidence standard, this court will affirm the ALJ's decision if there exists 'such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (quoting *Winschel*, 631 F.3d at 1178). The court may not "decide the facts anew, reweigh the evidence," or substitute its judgment for that of

the ALJ. *Winschel*, 631 F.3d at 1178 (quotation marks omitted). The court must affirm "[e]ven if the evidence preponderates against the Commissioner's findings." *Crawford v. Comm'r of Soc. Sec.,* 363 F.3d 1155, 1158–59 (11th Cir. 2004) (quotation marks omitted).

Despite the deferential standard for review of claims, the court must "'scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence.'" *Henry*, 802 F.3d at 1267 (quoting *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986)). Moreover, the court must reverse the Commissioner's decision if the ALJ does not apply the correct legal standards. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir. 1991). The Commissioner is charged with the duty to weigh the evidence, resolve material conflicts in testimony, and determine the case accordingly. *See Wheeler v. Heckler,* 784 F.2d 1073, 1075 (11th Cir. 1986). The ALJ's decision must be affirmed where it is supported by substantial evidence in the record as a whole. *See Martin v. Sullivan,* 894 F.2d 1520, 1529 (11th Cir. 1990); *Baker o/b/o Baker v. Sullivan,* 880 F.2d 319, 321 (11th Cir. 1989).

## III.  ALJ'S DECISION

To determine whether an individual is disabled, an ALJ follows a five-step sequential evaluation process. The ALJ considers:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or

combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178.

Here, the ALJ found that Ms. Hamilton did not engage in substantial gainful activity during the period from her alleged onset date of May 1, 2015 through her date last insured. (R. 15). Next, the ALJ found that Ms. Hamilton has the following medically severe impairments: post fusions and chronic pain syndrome. (R. 15). The ALJ also found that Ms. Hamilton had the following non-severe impairment: affective mood disorder. (R. 15). But the ALJ found Ms. Hamilton did not have an impairment or combination of impairments that met or equaled a listed impairment in 20 C.F.R. Subpart 404, Appendix 1. (R. 17).

After considering the evidence of record, the ALJ determined that Ms. Hamilton had the residual functional capacity:

> to lift and carry 20 pounds occasionally and 10 pounds frequently; and sit 6 of 8 hours and no more than 1 hour at a time without changing position, and stand/walk 6 of 8 hours and no greater than 30 minutes at one time without changing position. She can occasionally climb ramps/stairs, balance, stoop, crouch, and kneel, no crawling and no climbing of ladders, ropes or scaffolds, and no work at unprotected heights or moving machinery. She should avoid extreme cold and vibrations. She can understand, remember and perform simple tasks

and concentrate and persist for 2 hours at a time, 5 days a week and 40 hours a week.

(R. 17). Relying on testimony from a vocational expert, the ALJ concluded that through her date last insured, there were jobs existing in significant numbers in the national economy that Ms. Hamilton could perform, such as cafeteria cashier, information clerk, and storage facility rental clerk. (R. 17). Accordingly, the ALJ determined that Ms. Hamilton was not under a disability as defined by the Social Security Act. (R. 17).

## IV.  DISCUSSION

Ms. Hamilton argues that the court should reverse and remand the Commissioner's decision for three reasons: (1) the ALJ erred by failing to fulfill the Commissioner's duty to develop the record; (2) the ALJ erred by failing to mention or discuss meaningfully how Ms. Hamilton's headaches would affect her ability to perform work activity; and (3) the ALJ erred by improperly acting as both judge and medical doctor.  She also argues that the ALJ failed to properly evaluate her testimonial evidence.  Because the resolution of her final argument is necessary to resolve her first three arguments, the court will address that issue in the context of the other three issues.  The court addresses each issue in turn.

## A. *Duty to Develop the Record*

Ms. Hamilton argues that the ALJ failed to fulfill the Commissioner's duty to develop the record because the second ALJ failed to obtain the medical evaluation that the first ALJ thought was necessary.

At Ms. Hamilton's first administrative hearing, the ALJ discussed obtaining a medical evaluation of Ms. Hamilton's ability to lift, carry, bend or stoop because Ms. Hamilton was unable to procure a medical expert opinion from her doctors. (R. 59, 85). Nine months later, Ms. Hamilton received notice of a second hearing with a different ALJ. The second ALJ did not mention the first ALJ's statement about obtaining a medical evaluation nor did he inquire about a medical evaluation. Ms. Hamilton contends that because the second ALJ failed to obtain the medical evaluation that the first ALJ had determined was required for the Commissioner to make an informed decision, the ALJ failed to develop the record.[2]

"The claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." *Ellison v. Barnhart*, 355 F. 3d 1272, 1276 (11th Cir. 2003). However, it is well-established that the ALJ has a basic duty to develop a full and fair record. *Kelley v. Heckler*, 761 F.2d 1538 (11th Cir. 1985). The ALJ is not obligated to seek

---

[2] During the second hearing, Ms. Hamilton offered no expert opinion nor did she request that the ALJ obtain one. (R. 89-117). Additionally, Ms. Hamilton's attorney agreed at the second hearing that the record was complete. (R. 92).

independent medical expert testimony where the record is sufficient to make a determination without expert assistance. *Wilson v. Apfel,* 179 F.3d 1276, 1278 (11th Cir. 1999). "The [ALJ] has a duty to develop the record where appropriate but is not required to order a consultative examination as long as the record contains sufficient evidence for the [ALJ] to make an informed decision." *Ingram v. Astrue,* 496 F.3d 1253, 1269 (11th Cir. 2007) (citing *Doughty v. Apfel*, 245 1274, 1281 (11th Cir. 2001)).

Ms. Hamilton's argument hinges on the fact that the first ALJ found that he needed an independent medical evaluation to decide if she was disabled. (R. 59). The second ALJ did not address that finding, implicitly determining that such a report was unnecessary. Thus, this court will review whether the second ALJ's decision was supported by substantial evidence even in the absence of an independent medical evaluation.

Ms. Hamilton testified that pain and medication side effects prevent her from working. (R. 101). She testified that she cannot do anything during the day due to the amount of pain she experiences. (R. 63–74). The ALJ found that testimony incredible considering the objective medical evidence in the record.

In his decision, the second ALJ thoroughly and accurately described Ms. Hamilton's testimony about the limitations imposed by her pain as well as her treatment records, surgical notes, and follow-ups with physicians regarding pain

management. (R. 18–22). He found that her testimony about her limitations was inconsistent with her activities of daily living and that she "has attempted to portray having conditions more severe than can be shown by the objective medical record." (R. 21). Accordingly, to resolve the question whether the ALJ fulfilled his duty to develop the record, the court must determine whether substantial evidence supports his credibility finding about Ms. Hamilton's subjective complaints.

Under Eleventh Circuit precedent, "to demonstrate that pain renders her disabled, a plaintiff must 'produce evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain." *Edwards v. Sullivan,* 937 F.2d 580, 584 (11th Cir. 1991) (quoting *Landry v. Heckler,* 782 F.2d 1551, 1553 (11th Cir. 1986)).

The medical records establish that Ms. Hamilton's upper extremity strength was essentially normal (r. 19, 569, 573, 642, 646, 660), her spinal alignment is neutral, and there is not "a lot of significant stenosis." (R. 566). Medical evidence also shows that Ms. Hamilton sat and raised from a chair with no difficulty, and that her gate was grossly normal. (R. 642, 646, 653, 660, 670, 685). Her physical examination revealed that she exhibited "no overt pain behaviors." (R. 660).

Finally, the ALJ correctly noted that Ms. Hamilton reported no side effects from her medication. (R. 19, 659).

In addition, Ms. Hamilton's daily activities are inconsistent with the level of pain she describes. Ms. Hamilton is the primary caregiver of her 7 year old child. (R. 120). She is also able to grocery shop, do light cooking, and some laundry. (R. 106, 306).

The ALJ properly considered all relevant evidence in assessing Ms. Hamilton's subjective complaints of pain and functional limitations. Given the medical records and testimony about daily activities, substantial evidence supports the ALJ's credibility determination. And in light of that credibility determination, the ALJ was able to make a decision without an independent medical expert opinion due to the medical evidence Ms. Hamilton provided.

### B.    *Failing to Mention or Discuss Ms. Hamilton's Headaches*

Ms. Hamilton next argues that the Commissioner's decision should be reversed because the ALJ erred by failing to mention or discuss meaningfully how Ms. Hamilton's headaches would affect her ability to perform work activity. (*See* Doc. 12 at 11-14). She argues that the decision fails to even mention the word headache, much less give a rationale regarding the medically determinable impairment of headache. (*Id.* at 11).

Ms. Hamilton testified that she experienced "insane" headaches because of her neck pain. (R. 104). She also testified that her neck pain went into the front of her head and caused her headaches. (R. 96). Medical records show that in April 2016 she complained of daily headaches with "throbbing" neck pain. (R. 674). In August 2016, Ms. Hamilton described her headaches as "constant and throbbing in the frontal area and also from posterior neck up the back of her head and to the top." (R. 645). In January 2017, she complained of "headache that radiates to the crown [and] aching and stabbing pain in the posterior neck." (R. 705).

Ms. Hamilton alleges that because the ALJ did not mention the word "headache" in his opinion, he therefore erred as a matter of law. But, it is clear from both the medical evidence and her testimony that Ms. Hamilton's headaches are a symptom of her neck pain. (R. 101, 104, 677). Therefore, the ALJ implicitly addressed her headaches in his opinion when he found that Ms. Hamilton's subjective complaints about the limits imposed by her neck pain were not as debilitating as the objective medical evidence showed. And, as discussed above, substantial evidence supports that credibility determination.

### C. *ALJ Improperly Acting as both judge and doctor*

Ms. Hamilton's third argument is rooted in her first; she argues that the Commissioner's decision should be reversed because the ALJ did not obtain a medical evaluation of Ms. Hamilton's functional capacity and instead allowed his

"personal views," and his "own hunch or intuition" to guide his decision not to include any manipulative limitations in the residual functional capacity determination. (Doc. 12 at 14- 16).

Although the ALJ considers opinions from medical sources, the final responsibility for determining residual functional capacity lies with the ALJ. 20 C.F.R. § 404.1527(d)(2). In the present case, the record makes clear that the ALJ considered the entire record in determining the RFC. The ALJ properly evaluated the medical opinions on the record and stated with particularity the weight given to each opinion. (R. 17-22). And substantial evidence supports the ALJ's RFC finding.

Ms. Hamilton's argues that the residual functional capacity should have included manipulative limitations because she experienced some worsening of her ulnar nerve pain symptoms as well as continued numbness and tingling into the hands. (Doc. 12 at 15 (*citing* R. 656, 670)). But, the medical evidence does not support manipulative limitations. As previously discussed, the medical evidence establishes that Ms. Hamilton's physical strength remained at or around 4/5 and 5/5 despite her complaints. And, there was simply no treating or examining doctor who prescribed greater limitations for Ms. Hamilton than the ones contained in the RFC. Because substantial evidence supports the ALJ's determination, it will not be disturbed.

## V. CONCLUSION

For the reasons explained above, the court concludes that the Commissioner's decision is supported by substantial evidence, and the Commissioner applied the proper legal standards in reaching the determination. Therefore, the court **WILL AFFIRM** the Commissioner's final decision. The court will enter a separate order consistent with this memorandum opinion.

**DONE** and **ORDERED** this March 11, 2020.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE